IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **(UNDER SEAL)** |
| | ) | |
| v. | ) | CRIMINAL NO. 1:11-CR-454 |
| | ) | |
| ERIC ALBERTO AIKMAN-ALVARADO, Also known as "Hugo," | ) | Count 1 - 21 U.S.C. §§ 959(a), 960, 963 (Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending that it would be Unlawfully Imported into the United States) |
| FNU LNU, Also known as ▇▇▇▇ ▇▇▇▇▇▇▇ | ) | |
| and | ) | Forfeiture - 21 USC § 853, 970 (Criminal Forfeiture) |
| RENATO JOSE COOPER-BRANDFORD, | ) | |
| Defendants. | ) | |

## INDICTMENT

SEPTEMBER 2011 TERM - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

### Background

At all times relevant to this Indictment:

1. Colombia is responsible for the production of 90% of the cocaine that is imported into the United States.

2. Much of this cocaine is produced at illicit laboratories located in the Colombian interior, and then transported to border areas. The cocaine that leaves Colombia commonly is

sent along the Central American corridor and Mexico for eventual shipment to the United States. There is no substantial domestic drug market in the Central American countries and Mexico for cocaine. Additionally, the price of cocaine increases at each step in its journey north to the United States.

## COUNT 1

(Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending that it would be Unlawfully Imported into the United States)

From in or before April 2010 and continuing thereafter up to and including the date of the filing of this Indictment, the exact dates being unknown to the Grand Jury, in El Salvador, Panama, and elsewhere, the defendants, ERIC ALBERTO AIKMAN-ALVARADO, also known as "Hugo," FNU LNU, also known as ███████████████████████████████, RENATO JOSE COOPER-BRANDFORD, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959.

The allegations in paragraphs 1 and 2 of this Indictment are incorporated herein by reference.

### Manners and Means of the Conspiracy

The defendants and their co-conspirators used the following manners and means, among others, in furtherance of the conspiracy:

3. It was part of the conspiracy that AIKMAN-ALVARADO and others, known and unknown to the grand jury, had a Colombian source of supply for multi-kilogram quantities of cocaine.

4. It was further part of the conspiracy that AIKMAN-ALVARADO, ▇▇▇▇, and others, known and unknown to the grand jury, arranged for the transportation of this cocaine from Colombia to Panama.

5. It was further part of the conspiracy that ▇▇▇▇, and others, known and unknown to the grand jury, used connections at Panamanian ports to ship multi-kilogram quantities of cocaine to destinations in the United States, Europe, and Australia in freight shipping containers.

6. It was further part of the conspiracy that FNU LNU, also known as ▇▇▇▇ was a member of this drug trafficking organization who was based in the United States. FNU LNU, also known as ▇▇▇▇ was available to pick up drug proceeds at locations in the United States, including in the Eastern District of Virginia.

7. It was further part of the conspiracy that AIKMAN-ALVARADO, ▇▇▇▇ COOPER-BRANDFORD, and others, known and unknown to the grand jury, laundered drug proceeds received around the world back to Central America.

### Acts in Furtherance of the Conspiracy

In furtherance of the Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending that it would be Unlawfully Imported into the United States, the defendant, and others known and unknown to the grand jury committed the following acts:

8. On or about April 16, 2010, an undercover DEA Special Agent posing as a drug

customer called AIKMAN-ALVARADO from a (703) cellular telephone number to discuss arrangements to import between 500 and 1,000 kilograms of cocaine each month from Panama to the United States. During this conversation, AIKMAN-ALVARADO confirmed that he knew the undercover DEA Special Agent was based in Virginia.

9. On or about May 15, 2010, AIKMAN-ALVARADO traveled from Panama to El Salvador to meet with a DEA Confidential Informant ("CS-1") posing as a drug customer to discuss the sale of cocaine to be imported to the United States. During this meeting, AIKMAN-ALVARADO stated that he prefers to ship cocaine to the United States over European destinations because he receives his payment much quicker from the United States.

10. On or about May 18, 2010, AIKMAN-ALVARADO met with CS-1 and undercover law enforcement agents posing as drug customers in El Salvador. A undercover DEA Special Agent posed as a cocaine buyer from Virginia. During meeting, AIKMAN-ALVARADO stated that he conceals drugs in freight shipping containers, and that he has the ability to ship drugs anywhere in the world. AIKMAN-ALVARADO stated that he has sent drugs to New York and Miami, and that he agreed to ship cocaine to Virginia.

11. On or about May 26, 2010, AIKMAN-ALVARADO placed a telephone call to an undercover DEA Special Agent posing as a drug customer. During this call, AIKMAN-ALVARADO agrees to send 50 kilograms of cocaine from Panama to Virginia.

12. On or about August 26, 2010, COOPER-BRANDFORD traveled from Panama to El Salvador to discuss arrangements to ship cocaine to the United States with CS-1.
(In violation of Title 21, United States Code, Sections 960 and 963).

## FORFEITURE NOTICE

Each defendant, if convicted of the violation alleged in Count 1 of this Indictment, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853(a), any property constituting, or derived from, any proceeds each defendant obtained, directly or indirectly, as the result of such violation; and any of the defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation. This property includes, but is not limited to $5,000,000 in United States currency, representing proceeds that each defendant obtained in the course of the conspiracy alleged in Count 1 of this Indictment. (Pursuant to Title 21, United States Code, Section 853).

A TRUE BILL

_____
Foreperson

Neil H. MacBride
United States Attorney


By: _____
Michael P. Ben'Ary
Assistant United States Attorney